Filed 11/13/24  Munoz v. City of Los Angeles CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ALFONSO MUNOZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF LOS ANGELES,<br><br>    Defendant and Respondent. | B321795<br><br>(Los Angeles County<br>Super. Ct. No. 18STCV01290)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed on October 16, 2024, is modified as follows:

On page 25, the sentence reading, "Respondent City of Los Angeles is awarded its costs on appeal." is deleted, and is replaced with a sentence stating, "The parties are to bear their own costs on appeal."

The petition for rehearing filed on October 31, 2024, by plaintiff and appellant Alfonso Munoz is denied.

There is no change in judgment.

---

MOOR, Acting P. J.          KIM, J.

Filed 10/16/24  Munoz v. City of Los Angeles CA2/5 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ALFONSO MUNOZ,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>CITY OF LOS ANGELES,<br><br>  Defendant and Respondent. | B321795<br><br>(Los Angeles County Super. Ct. No. 18STCV01290) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge.  Affirmed.

The Law Offices of John A. Schlaff and John A. Schlaff for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Scott Marcus, Chief Assistant City Attorney, Shaun Dabby Jacobs, Supervising Assistant City Attorney, and Timothy Martin, Deputy City Attorney for Defendant and Respondent.

Plaintiff and appellant Alfonso Munoz appeals from a summary judgment in favor of his employer, defendant and respondent City of Los Angeles, in this action for retaliation under the California Fair Employment and Housing Act (FEHA; Gov. Code §12900 et seq.).[1]  On appeal, Munoz contends triable issues of fact exist as to whether the City took an adverse employment action against him in retaliation for making a complaint to the City about his coworker's discriminatory conduct.  We conclude there is no triable issue of material fact as to whether Munoz was subjected to an adverse employment action.  The undisputed evidence showed Munoz did not want to continue working in proximity to the coworker, so the City gave him several options to choose from, including simply moving his desk or taking another position.  Munoz's evidence did not raise a triable issue of fact that the City took an adverse action against him.  Summary judgment was properly granted, and therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  Undisputed Facts

The Los Angeles Police Department (LAPD) commercial crimes division includes the financial crimes section.  In 2016, the officer in charge of financial crimes (OIC) was Lieutenant Gregory Doyle.

---

[1] All further statutory references are to the Government Code unless otherwise stated.

Financial crimes contains two units:  the Valley financial section (VFS) located primarily in Van Nuys and the metropolitan financial section located in downtown Los Angeles.

At the Van Nuys office, the assistant officer in charge (AOIC) of VFS was Detective III Vivian Flores.  She was the longest serving officer in VFS.  Detective III James Jarvis led the arrest/filing team at the Van Nuys office.

In October 2016, Munoz, who is also a Detective III, joined VFS.  Munoz's expertise is in surveillance.  Initially, he worked with a task force located at the Chatsworth courthouse.

In December 2016, Munoz was assigned to the Van Nuys office to form a field enforcement element (FEE) unit to generate arrests.  He supervised Detective I Brian Thayer and intended to recruit two additional detectives to the unit.

That same month, LAPD Captain III Charles Hearn took over command of the commercial crimes division.

In February 2017, when Jarvis took extended medical leave, VFS was reorganized.  The FEE unit at the Van Nuys office was eliminated.  Munoz took over Jarvis's arrest/filing team, and Thayer moved to the arrest/filing team with him.  Flores continued as AOIC.  It was anticipated that when Jarvis returned months later, he would lead a "Category 1 Team."

Flores and Munoz experienced personality conflicts because Flores treated Munoz as a subordinate, rather than a coequal Detective III.  Flores told Munoz that he was a "typical male Hispanic, macho man."

In April 2017, Munoz explained to Hearn the issues that he was having with Flores.  Hearn initiated a personnel complaint on Munoz's behalf with the internal affairs department.  Hearn gave Munoz several options while the complaint was being

3

investigated, including remaining at the Van Nuys location and reporting directly to Doyle or transferring to positions available at the South Bureau office or downtown Los Angeles .

On April 12, 2017, Munoz wrote an email to Hearn declining to work at South Bureau or downtown Los Angeles. Munoz felt those options seemed like a punishment for bringing Flores's misconduct to Hearn's attention.  About the option to report directly to Doyle in the same office as Flores, Munoz wrote, "Now that this has come out I feel there may be some type of retaliation for coming forward.  [It's] hard to think that this would be kept confidential."  He noted that Hearn denied his request to assume his old role and stay in the field with his partner.  In light of the limited time to make a decision, he decided to stay at the Van Nuys office and report to Doyle.  He asked for additional direction as to that option.

After a conversation with Hearn, Munoz wrote another email confirming that he would move to the Davis facility where the commercial auto theft section (CATS) was located, report directly to Doyle, and work on VFS Category 1 cases with Thayer as his partner.  Thayer moved to the Davis location with Munoz and continued to report to Munoz.

Munoz's performance review for the period from October 2016 to June 2017, prepared by Doyle in September 2017, stated Munoz met or exceeded standards in all applicable categories, and Munoz received an overall "satisfactory" rating, which was the highest rating.

In January 2018, the internal affairs department completed its investigation.  The allegation that Flores treated Munoz like a subordinate was classified "Employee's Action Could be

Different" and the allegation that Flores called Munoz a "typical male Hispanic, macho man" was sustained against Flores.

In an email exchange in January 2018, Hearn advised Munoz that the investigation was concluded, so Munoz and Thayer should make every effort to attend general VFS squad meetings and training days, as well as senior employee meetings. Munoz replied, "Just making sure that you now want interaction between [Flores] and myself and no longer want us to avoid all contact per our last conversations in your office two weeks ago?" Hearn responded, "You do not have to avoid contact at all. I encourage you to establish a healthy relationship with [Flores]."

At some point, Thayer transferred to the major crimes division, a specialized division within LAPD that was outside Hearn's authority. In February 2018, Munoz requested an administrative transfer to the major crimes division. An employee relations administrator notified the commanding officer of the personnel division that Munoz had requested an administrative transfer to resolve a conflict within the command. The administrator reviewed the request and concluded there was not sufficient justification for an administrative transfer, because Munoz could be reassigned within in the command. Munoz asked Hearn to loan him to the major crimes division, which Hearn considered but ultimately declined to do.

April 2018, Hearn discussed options with Munoz. Hearn offered Munoz the choice of several positions within Hearn's authority, including a training coordinator position, a South Bureau CATS position working out of the Davis location, or the option to continue handling cases at VFS.

Munoz met with Lieutenant Hollis, who had taken over for Doyle, and Lieutenant Solano, who was assigned to downtown, to

discuss his options. They offered essentially the same options as Hearn, including the training coordinator position downtown, a position at the South Bureau section, a position in Metro Financial, and a position in the due diligence unit in downtown Los Angeles, which consisted of two Detective I employees without supervisor. The due diligence unit was in charge of all the warrants in the division.

Munoz said that he would be interested in the due diligence unit if they worked out of the Davis facility, since Munoz was already at the Davis location. Solano agreed to present the request to Hearn. Hearn approved Munoz's transfer to the due diligence unit and his request to continue working from the Davis location.

On July 9, 2018, two months after Munoz was assigned to due diligence, Hearn approved a positive performance evaluation, which stated in pertinent part: "Detective Munoz is a very effective supervisor, who should consider promotion to lieutenant, a position for which he is well qualified."

## B. Allegations of the Complaint

On October 18, 2018, Munoz filed a complaint against the City for retaliation in violation of the FEHA based on the following allegations. In February and April 2017, Munoz reported incidents to Doyle of hostile work environment and discriminatory comments that Flores made about Munoz's race and gender. On April 11, 2017, Munoz made a complaint about Flores' discriminatory conduct to Captain Hearn. Immediately afterward, Hearn reassigned Munoz to a lesser position investigating Category 1 cases, a position suitable for a

Detective I. Munoz was transferred from the VFS worksite to the Davis facility, which is not even a division of the department. Stripping him of his duties and assigning him far lesser duties that were not befitting his rank was an adverse action. At the Van Nuys office, Munoz had supervised five or six people. At the Davis facility, Munoz had one person to work with and few employees at the site. Munoz remained at this assignment for a year. Although Flores was found to have made discriminatory comments, she remained in her work location and Munoz is not aware of any punishment that she received. Munoz was reassigned to downtown Los Angeles to the due diligence unit to work on warrants, where he remained under Hearn's supervision.

As a result of LAPD's actions, including transferring him to lesser assignments and undesirable work locations, Munoz has lost income, earnings, advancement and promotional opportunities, overtime and other benefits, including the ability to obtain coveted positions. His career has been and will continue to be negatively impacted.

## C. Motion for Summary Judgment and Supporting Evidence

On December 23, 2021, the City filed a motion for summary judgment on the grounds that Munoz had not suffered an adverse employment action, could not establish a prima facie case of retaliation because there was no causal link, and the City had a legitimate business reason for its actions, which Munoz could not show to be pretextual.

The City submitted Doyle's declaration. Doyle learned of the personality conflicts between Flores and Munoz. After Munoz

filed the complaint against Flores, Munoz was clear that he did not want to work with her. Flores was instrumental in the daily operations of VFS, had developed expertise in financial crime, and was training subordinate detectives in these types of cases. Moving Flores would have been highly disruptive for VFS due to her integral role.

Doyle supervised Munoz at the Davis location, where Munoz continued to work on VFS cases and carry out arrest warrants. Doyle assigned Munoz cases and responsibilities commensurate with the job duties of a Detective III.

Doyle declared that he has no ill will or animosity toward Munoz. Doyle did not take any actions toward Munoz in retaliation for complaining about Flores. Munoz continued to attend squad meeting and training sessions at the VFS office. Doyle did not restrict Munoz from access to the Van Nuys office or limit any resources from him. He did not restrict Munoz from engaging with any employees. The only limitation was the same as the one placed on Flores: not to engage with each other. Munoz was welcome to participate in any office luncheon or holiday gatherings. Doyle only became aware of Munoz's allegations of retaliation through the lawsuit.

The City also submitted Hearn's declaration. When Munoz filed his complaint against Flores, Munoz was clear in his request not to work with Flores. Munoz wanted Flores removed from her position. He believed that he could replace her. This solution would have been highly disruptive for the section, particularly because Jarvis was out on extended medical leave. Removing Flores would have left VFS without either of the two senior detectives with the most experience at VFS. Munoz would have had to assume the duties of the AOIC, supervise the entire office

8

as the only Detective III, and maintain his own case load when he was new to the section himself. Additionally, while Flores had proven ability to meet the administrative demands of the position, Munoz's experience was concentrated in surveillance work, not administration.

Hearn declared that he offered Munoz the following five options. Munoz could continue to work in the same building and have his desk temporarily moved to a different part of the same floor. Munoz declined this option. Munoz could take a position with the surveillance team in downtown Los Angeles where another detective was set to retire, and as long as Munoz's performance was adequate, he could have the opportunity to take over the team. Munoz declined this option as well. Munoz could supervise CATS, which is an elite unit in auto theft, but he declined. Hearn offered Munoz a position as a training coordinator, but he declined. Hearn offered that Munoz could continue his VFS work from the Davis Training Facility. Munoz accepted this option.

Hearn understood the Davis Training Facility to be close to Munoz's house, making for a convenient commute. He also believed that Munoz had a sick daughter, which had an impact on his work hours, so the Davis location was more conducive for him. Hearn told Doyle to oversee Munoz's case assignments and administrative needs. Munoz received meaningful work, emphasizing field work such as arrests and surveillance. Hearn also approved Thayer to be relocated with Munoz. Hearn approved Munoz's performance evaluations in 2017 and 2018.

Munoz wanted an administrative transfer to the major crimes division, which is outside Hearn's authority. Hearn relayed Munoz's request. He is informed that the employee

relations administrator denied the request because there was insufficient justification for an administrative transfer. Munoz had to compete and be evaluated like other candidates.

Munoz did not suffer any disciplinary action for complaining about Flores. He was never suspended, demoted, or downgraded because of his complaint. He continued to receive the same pay and benefits, and he worked the same hours. He remains a Detective III. Hearn has no ill will or animosity toward Munoz. He never considered Munoz's allegations when he made personnel decisions affecting Munoz. He also did not take any actions toward Munoz because of any alleged protected activity by Munoz.

The City included a message that Hearn wrote to Munoz in April 2018, after the complaint against Flores had been adjudicated and the administrative transfer denied. Hearn stated, "Since the admin transfer has been denied we need to consider other options for you. I know early on you told me you didn't want to work in the same office with [Flores] and hence you were accommodated to continue working VFS but closer to home with Thayer at Davis. You may remember at the start, I offered you a position as an AOIC in the FEE with Joe Callian, also the training coordinator job, Gary [Guevara's] job, and a CATS job working south bureau but housing at Davis. You did not want the jobs and preferred to work VFS with Thayer at Davis. Some of those jobs I offered are gone now . . ., however the training coordinator is still available and south Bureau CATS is still available working out of Davis. [¶] If you would like, come on in to discuss those two open positions, or [remain] handling the cases at VFS."

The City submitted Munoz's responses to special interrogatories asking him to identify each adverse action that he believed he suffered as a result of retaliation, Munoz stated that discovery was not complete, but he was subject to involuntary adverse transfers to lesser positions at the LAPD which were not consistent with his rank and experience, including but not limited to the transfer to the Davis facility.

The City also submitted excerpts from Munoz's deposition testimony. Hearn said Munoz would be in limbo for about a year while the complaint was investigated, and they would come up with a solution at the conclusion of the investigation. When Munoz first moved to the Davis location, he was ordered not to speak with anybody at VFS in Van Nuys. The only person he was to report to was Doyle, and on Jarvis's return to duty, he would report to Jarvis. Munoz's job dwindled down to working Category 1 cases, and he was assigned two or three cases at a time. Munoz's pay, benefits, and hours did not change. He did not apply for any promotions during the relevant time. He supervised one person at the Davis location, the same person that he had supervised originally at the Van Nuys location. After the complaint against Flores was sustained, Hearn stated that he was keeping Flores in her position, which Munoz considered to be retaliation against him for reporting misconduct.

Flores was in charge of the sign-up sheet for overtime and she would not put Munoz on the list. Munoz complained to Jarvis about not getting overtime calls, but he did not elevate the complaint about overtime to a lieutenant.

**D. Opposition to Motion for Summary Judgment and Supporting Evidence**

In March 2022, Munoz opposed the motion for summary judgment on the grounds that the City's evidence was inadmissible, the City failed to meet its burden, and there were triable issues of fact as to each element raised by the City.

Munoz submitted the emails that he wrote to Hearn on April 12, 2017. The second email stated in pertinent part, "In our phone conversation earlier today, you advised after thinking of what to do, I will be moved to the Davis facility where the CATS unit is housed and I will be working Cat 1 cases away from the VFS."

Munoz submitted an email he wrote a year later, on April 11, 2018, after the administrative transfer was denied. He reminded Hearn that from the beginning, Munoz had been upset about moving positions when he was the one who brought Flores's misconduct to light. Munoz stated, "[y]ou advised me that I would have to pick a place to work until the complaint was completed by Internal Affairs Division. I remember expressing my disagreement with that decision and I was asked to think about it. You then said you had [a] couple options for me to think about which was working the training unit in the building [downtown] or working CATS/South Bureau. I then again expressed how unfair it was to me to have to drive [to downtown and/or] the south end of the city, when I was the person who brought the misconduct to your and the departments attention. At that time I had no idea that CATS main office was out of Davis. Those were the only options that were given to me in

person and when I left that meeting I was asked to give it a few days to think about it."

Munoz disagreed that Hearn had given him the option to work in the FEE unit downtown, which he would have taken. He described his memory of their conversation as follows: "It was later on in the day that you called me on the phone and gave me the same options again and during that conversation I again expressed my feelings on why it was me being moved and not [Flores]. I was not given an answer. You then advised me you would think more on the issue and get back to me. Upon getting back to me later on in the day, your solution was to move me to Davis and give me a desk and a partner to work only Cat-1 cases until the complaint was completed. I was to have zero contact with [Flores] and all my involvement with any cases and or any business to do with VFS will go through Lt. Doyle or DIII Jarvis. I advised you that I will do as my command ask of me as I always have." He asked for additional time to consider his options.

Munoz prepared a summary of his meeting with Hollis and Solano on April 25, 2018. He described the options that he was given, including the option to work at VFS in the office with Flores again.

Munoz submitted the declaration of LAPD Captain Lillian Carranza. Carranza replaced Hearn in the Commercial Crimes Division around the time that Munoz was assigned to the due diligence unit. In her experience with workplace harassment cases, the accused party would be relocated during the investigation. In her view, moving Munoz suggested favoritism toward the accused party and created a perception that Munoz had committed misconduct.

Hearn said Munoz was not a very productive employee and not as valuable to the unit as Flores. Hearn stated that he assigned Munoz to Solano "because he needed close supervision and Lieutenant Solano needed to 'keep an eye' on Detective Munoz and report back to him about Detective Munoz' attitude." The only conduct Hearn that identified as deficient was Munoz's attitude. Carranza believed these instructions set Munoz up for failure. When Carranza arrived, she had serious concerns about Flores's ability to manage her workload.

Munoz submitted Jarvis's declaration. As supervisor of the arrest/filing team, he supervised three or four dedicated arrest investigators. His desk was next to Flores' desk and Munoz's desk was a few feet away. Munoz enjoyed being in the field and working up cases; he did not like administrative work and did not want Flores's job. When Carranza replaced Hearn, she was critical of the case backlog that had not been assigned for investigation and concerned about the statute of limitations running out. Shortly afterward, Flores was assigned to another location.

Jarvis was surprised that Munoz was transferred to another location after lodging a complaint. The general perception was the accused party in a personnel action would be transferred. By moving Munoz, it could be perceived that he was at fault or committed misconduct.

Munoz submitted Solano's declaration. Solano also expressed surprise at Munoz's relocation. After Munoz moved to the due diligence unit, Hearn told Solano to "keep tabs" on him. Hearn wanted Solano to give regular feedback on Munoz's attitude. Solano understood Hearn to be looking for negative information about Munoz, which could be considered damaging to

Munoz's reputation. Solano considers Munoz to be a great supervisor who follows the rules.

Munoz submitted Hearn's deposition testimony. Hearn noticed Munoz seemed to have more absences than usual for his position, going back before Munoz complained about Flores. Munoz told Hearn that his daughter was ill. Hearn asked Doyle to conduct an audit, which showed Munoz's use of sick time was not statistically different from other employees within his rank classification. Munoz was not admonished for his use of sick time, no counseling was initiated, and there was no notation in his personnel file about having checked his use of sick time.

Hearn told Munoz to use the administrative form to request a loan to the major crimes division, but ultimately, Hearn did not support the loan request. Employees had to earn a position in a specialized division, compete with other candidates and undergo evaluation, rather than simply being sent there. Hearn had lost several employees through "[m]anaged [a]ttrition" and several senior employees were retiring, but the workload had not decreased, so he did not consider it feasible to loan out any employee. The commander responsible for the major crimes division told Hearn that Munoz had to apply for a position like other employees.

Munoz submitted his own deposition testimony. After he made his complaint against Flores, Doyle told him not to talk to anyone, or attend any functions or trainings, at the Van Nuys location. This restriction lasted for approximately a year. At the Davis facility, he was housed with another entity from the commercial crimes division, but isolated to a corner desk. He had been supervising approximately six people when he left Van Nuys, but at Davis he performed the work of a Detective 1

15

handling Category 1 cases.  His pay, benefits, and hours did not change though.  In January 2018, Hearn encouraged Munoz to reintegrate with the Van Nuys office for meetings, trainings, and functions.

Munoz submitted Thayer's deposition testimony as well. Thayer also made a complaint to the City about Flores's conduct. After making his complaint, Thayer told Hearn multiple times that he was uncomfortable to be around Flores, the thought of running into her made Thayer uncomfortable, and he did not even want to go in the Van Nuys office to use the restroom because he was afraid of running into her.  Thayer believed Flores should have been removed from the command at VFS.

Munoz filed objections to the evidence submitted by the City.

## E.  Reply and Trial Court Ruling

The City filed a reply arguing, among other points, that there was no triable issue of fact as to whether Munoz suffered an adverse employment action.  The City also filed objections to Munoz's evidence.

A hearing was held on March 18, 2022.  Munoz argued there was sufficient evidence to raise a triable issue of fact whether he had been subjected to an adverse employment action. He suggested that when he was transferred to the Davis facility, the entire arrest/filing team could have been moved to the Davis facility as well.

The trial court granted the motion for summary judgment. The court noted that it was only required to rule on objections material to disposition of the motion for summary judgment, and

therefore, the court declined to rule on Munoz's evidentiary objections. An adverse employment action requires a substantial adverse change in the terms and conditions of employment. Munoz's maintained the same rank, pay, benefits, and hours. Munoz did not want to work with Flores and was offered several options to accommodate his request, including operating out of the Davis facility. Munoz had previously worked at an off-site location when he joined VFS, so performing work at an off-site location was not, of itself, an adverse employment action.

Munoz's transfer to the due diligence unit was also not an adverse employment action. His request to transfer to major crimes was outside Hearn's authority. After Munoz requested to work in the due diligence unit, and requested that the unit work from the Davis location, his requests were granted. Based on the City's evidence, Munoz could not show he suffered an adverse employment action because the material terms and conditions of his employment did not change. In addition, even if Munoz suffered an adverse employment action, the City's evidence supported a reasonable inference that Munoz was transferred as a personnel decision based on operational needs rather than personal animus toward Munoz.

The court concluded Munoz's evidence in opposition to the motion was not sufficient to show a triable issue of material fact. Temporal proximity was not sufficient to rebut a legitimate, non-discriminatory reason for an adverse employment action. Hearn's declaration was evidence of his own impressions. Munoz did not submit any evidence to dispute Hearn's narrative. The fact that Flores had disputes with her subordinates did not contradict that she was the most experienced senior detective at VFS, and the fact that cases were backing up in VFS did not

support an inference that Flores should have or could have been transferred instead of Munoz. Evidence that she had disputes with subordinates or her work was not superior did not conflict with Hearn's assessment that it would be more disruptive to move her. Munoz did not submit evidence that suggested Hearn's declaration was pretextual or self-serving, so the court found the declaration admissible.

The court noted the vague claims about people's general impression of a transferred party did not provide any evidence that Munoz's professional reputation was in fact damaged. They failed to show his reputation was actually damaged in a way that had a material impact on his career and constituted an adverse employment action. A reasonable finder of fact could not infer from Munoz's evidence that he was in fact negatively impacted by his transfer.

Moreover, Munoz was offered opportunities to stay within the same building, to supervise another unit, and to work as a training coordinator. There was no evidence disputing that Munoz requested to work with the due diligence unit at the Davis facility.

Munoz's evidence that he was excluded from meetings and social gatherings was insufficient to constitute an adverse action. He did not submit evidence showing this had a material impact on his employment, reputation, or opportunities for promotion. Particularly because Munoz's evidence showed that after the investigation concluded, he was encouraged to fully reintegrate with VFS and instructed to attend meetings and potlucks.

Munoz failed to submit evidence that his job duties changed in a way that constituted an adverse action. He was still in a Detective III specialized unit. In sum, Munoz failed to meet

his burden to show a triable issue of material fact as to whether he suffered an adverse employment action. The trial court granted the motion for summary judgment. On April 20, 2022, the court entered judgment in favor of the City. Munoz filed a timely notice of appeal.

## DISCUSSION

## A. Standard of Review and General Principles

The trial court properly grants summary judgment when the moving papers demonstrate that no triable issue of material fact exists, and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review the trial court's decision de novo, liberally construing the plaintiff's evidence while strictly scrutinizing the moving defendant's submission. (*Smith v. St. Jude Medical, Inc.* (2013) 217 Cal.App.4th 313, 320.)

A defendant meets its burden of showing that a cause of action has no merit if it shows that "one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) Once a defendant has carried that burden, the burden shifts to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action . . . ." (Code Civ. Proc., § 437c, subd. (p).)

Section 12940, subdivision (h), prohibits employer retaliation against an employee who engages in certain protected conduct. Specifically, section 12940, subdivision (h), makes it

unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [the statute] or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (§ 12940, subd. (h).)

"[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. [Citations.] Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).) If the employer produces a legitimate reason, the burden shifts back to the employee to prove intentional retaliation. (*Ibid*.) A plaintiff must offer "evidence sufficient to allow a trier of fact to find either the . . . stated reasons were pretextual or the circumstances ' "as a whole support[ ] a reasoned inference that the challenged action was the product of . . . retaliatory animus." ' " (*Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75, 94.)

" ' "If the employer presents admissible evidence either that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing." ' " (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 344, italics omitted.)

## B. No Adverse Employment Action

Munoz contends the City failed to meet its burden on summary judgment, or if it did, that he showed a triable issue of fact exists as to whether he suffered an adverse employment action in retaliation for filing a complaint with the City about Flores' conduct.  We disagree.

To constitute an "adverse employment action" within the meaning of FEHA, an action "must materially affect the terms, conditions, or privileges of employment." (*Yanowitz*, *supra*, 36 Cal.4th at p. 1052.)  Adverse employment actions include not only hiring, firing, demotion, or failure to promote, but also "the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for" career advancement.  (*Id.* at p. 1054.)

"Retaliation claims are inherently fact-specific, and the impact of an employer's action in a particular case must be evaluated in context.  Accordingly, although an adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable, the determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim." (*Id.* at p. 1052.)  "[T]he determination of what type of adverse treatment properly should be considered discrimination in the terms, conditions, or privileges of employment is not, by its nature, susceptible to a mathematically precise test, and the significance of particular types of adverse actions must be evaluated by taking into account the legitimate

interests of both the employer and the employee." (*Id*. at p. 1054.) We construe "the phrase 'terms, conditions, or privileges' of employment" liberally and "with a reasonable appreciation of the realities of the workplace." (*Ibid*.)

"[A]n employer may be held liable for coworkers' retaliatory conduct if the employer knew or should have known of the coworkers' retaliatory conduct and either participated and encouraged the conduct, or failed to take reasonable actions to end the retaliatory conduct." (*Kelley v. The Conco Companies* (2011) 196 Cal.App.4th 191, 213.)

In this case, the City presented evidence that no adverse employment action was taken against Munoz. After Munoz instituted a complaint against Flores, he did not want to continue working with Flores. Hearn provided several options to accommodate Munoz's request not to work with Flores. One option was to continue to work at his same position in the same building, but have his desk temporarily moved to a different part of the same floor and report directly to Doyle. In other words, Munoz could have chosen to continue working at his same job at the Van Nuys office without any change, or he could have chosen to work at the same job from a different desk at the Van Nuys office and report directly to Doyle. The City did not require Munoz to transfer to a different position or work from a different location. Instead, Munoz chose a different option which allowed him to report directly to Doyle and work on VFS Category 1 cases from a location closer to his home. This evidence was sufficient to meet the City's burden to show that transferring Munoz to the Davis facility was not an adverse action taken against Munoz for filing a complaint, but rather a choice by Munoz that he preferred

over continuing to work his VFS job supervising the arrest/filing team at the Van Nuys office in proximity to Flores.

It's undisputed that Munoz was given several options. Requiring Munoz to choose among several options was not an adverse employment action unless every option would have materially affected the terms, conditions, or privileges of his employment. In opposition to the motion, Munoz did not refute that he could have continued to perform his same VFS job at the Van Nuys office without change or from a desk in a different location on the same floor. Furthermore, he did not present any evidence that continuing his job at the Van Nuys office would have materially affected the terms, conditions, or privileges of his employment. As to the other options offered, Munoz later stated that he would have taken the position with the elite CATS unit if he had realized the unit operated from the Davis facility. Munoz's choice to transfer to a position where he would supervise fewer people, have less complex work, and be closer to his home, rather than continuing at his job at the Van Nuys office or taking a desirable position offered with CATS, was not an employment action against Munoz.

Munoz characterized the transfer to the Davis facility as Hearn's decision, but it was undisputed that Munoz was given several options he declined, including the option to remain at the Van Nuys location and a desirable CATS position. There was no evidence from which a trier of fact could conclude the decision to transfer Munoz to the Davis facility to work on Category 1 cases was an adverse employment action taken against Munoz.

Munoz's evidence did not raise a triable issue of fact as to whether he suffered an adverse employment action, even when viewed in the aggregate. Although Munoz submitted evidence

23

that an employee transferred after making a complaint is often perceived as being "at fault," Munoz was not involuntarily transferred, and there was no evidence that Munoz's reputation was in fact damaged. Hearn's refusal to loan Munoz to another command for a coveted specialized division is not evidence of an adverse employment action without evidence that Munoz was qualified for the position that he sought, and other less qualified candidates were approved for similar loans. Hearn's unofficial audit of Munoz's use of sick time, which Munoz was not aware occurred, concluded Munoz's use of sick time was appropriate. Munoz was not criticized or counseled about his use of sick time; there was not even a notation in his file to flag that his use of sick time had been checked. Hearn's comments or advice to Carranza and Solano about supervising Munoz, although perceived to be negative, did not affect the regard that Carranza and Solano had for Munoz. A trier of fact could not conclude from the reputation evidence submitted in this case, even considered in the aggregate, that Munoz suffered an adverse employment action materially affecting the terms, conditions, or privileges of his employment. We note that the City's decision to allow a different employee, Flores, to continue working at her position was not an adverse employment action taken against Munoz. The trial court properly granted summary judgment on the ground that there was no evidence of an adverse employment action.

## DISPOSITION

The judgment is affirmed.  Respondent City of Los Angeles is awarded its costs on appeal.

NOT TO BE PUBLISHED.


                                    MOOR, Acting P. J.

WE CONCUR:



        KIM, J.



        DAVIS, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.